FIDELITY & DEPOSIT COMPANY OF MARYLAND *v.*
MARION NATIONAL BANK ET AL.

[No. 17,370. Filed January 21, 1946. Rehearing denied March 11, 1946.]

454

*Kane, Blain & Hollowell,* and *Leon J. Mills,* all of Indianapolis, and *Kenner & Carlson,* of Huntington, for appellant.

*Van Atta, Batton & Harker,* of Marion, and *Bowers, Feightner & Palmer,* of Huntington, for appellees.

HAMILTON, J.—This was an action instituted by the appellant, Fidelity and Deposit Company of Maryland, against the appellee, Marion National Bank of Marion, Indiana, to recover a money judgment, to which action the appellee, Local Finance Corporation of Marion, Indiana, was made a party defendant.

The complaint sought recovery against appellee bank upon the theory that the appellee Local Finance Corporation was the owner of certain checks, 28 in number, which were all made payable to said Local Finance Corporation, and on the back of each of said checks was a restrictive endorsement as follows: "Pay to the order of Marion National Bank of Marion, Marion, Ind., Local Finance Corp." That each of said checks came into the possession of appellee bank; that said bank collected and received the proceeds of each of said checks and never accounted therefor to Local Finance Corporation; that said Local Finance Corporation assigned all of its rights of action against appellee bank in connection with said checks to the appellant; that appellee Local Finance Corporation was made a party defendant to answer as to any interest it might have in said assignment. Judgment was demanded against appellee bank in the sum

of $6433.74, with interest thereon, said sum being the total amount represented by all of said checks. The appellee, Local Finance Corporation, filed an answer admitting the assignment and disclaiming any interest in the claim sued upon in the complaint.

Appellee bank filed an answer in two paragraphs. In its first paragraph of answer appellee bank admitted the facts alleged in the first rhetorical paragraph of the complaint; alleged that said appellee was without information as to the facts alleged in certain other rhetorical paragraphs of the complaint; and denied the allegations of facts contained in the remaining rhetorical paragraphs of the complaint. Appellee bank's amended second paragraph of answer contained the same allegations as the first paragraph of answer, and then proceeded to allege facts based upon the theory that the transactions in question came within the purview of the provisions of the Indiana Uniform Fiduciaries Act, and that therefore having made the payment of the checks in question to one Blocker, who held the office of comptroller in appellee Local Finance Corporation and was a fiduciary under the said act, appellee bank was protected in making the payments in cash to said Blocker as against appellee Local Finance Corporation, who was Blocker's principal. Said amended second paragraph of answer was based upon the provisions of §§ 1 and 4 of the Indiana Uniform Fiduciaries Act, being §§ 31-101 and 31-104, Burns' 1933, §§ 7709 and 7712, Baldwin's 1934.

Appellant filed a reply to appellee bank's amended second paragraph of answer, denying certain facts alleged in said paragraph of answer and alleging other facts to show that the Uniform Fiduciaries Act was not applicable to the facts involved.

Upon the issues thus formed the cause was sub-

mitted for trial to the court without intervention of a jury, resulting in a general finding against appellant and in favor of appellee bank to the effect that appellant take nothing by its complaint and that appellee bank recover its costs.

The single error assigned in this court is the overruling of appellant's motion for a new trial based upon the grounds that the finding and decision is contrary to law and not sustained by sufficient evidence.

The cause was submitted upon a stipulation of facts and the material facts necessary to an understanding of the questions presented are as follows: The appellee bank is a national bank engaged in operating and conducting a general banking business at Marion, Indiana. The appellee, Local Finance Corporation, is engaged in operating a small loan business with its home office located in Marion, Indiana, and branch offices located elsewhere in Indiana and in Illinois. Said Local Finance Corporation was a customer and depositor of appellee bank. That during the period from November 10, 1934, to November 27, 1939, Local Finance Corporation had in its employ one C. C. Blocker; that during the period from November 10, 1934, until January 27, 1938, said C. C. Blocker had the title of "auditor" of said Local Finance Corporation; that during the period from January 27, 1938, to November 27, 1939, he had the title of "comptroller" of said Local Finance Corporation; that Blocker's duties consisted in keeping the general books of account of said Local Finance Corporation, and he made all of the entries therein. He generally and regularly made deposits in the bank account of said Local Finance Corporation in appellee bank. He wrote checks on all of the home office bank accounts representing advances to the branch offices of said Local Finance Corporation and in payment of the

home office expenses of said corporation. He received checks and cash belonging to said corporation at its home office at Marion, Indiana, and from time to time he deposited the same in the home office bank account of Local Finance Corporation in appellee bank. That a part of his duties required him to make deposits of money and checks belonging to said Local Finance Corporation in appellee bank. In carrying out his duties, Blocker was authorized to place the following rubber stamp endorsement on said checks: "Pay to the order of Marion National Bank of Marion, Marion, Ind., Local Finance Corp." During all of the period of Blocker's employment a rubber stamp in the form above set forth was furnished or made available to said Blocker and other employees of said Local Finance Corporation for use in placing the stamped endorsement on checks payable to Local Finance Corporation and which were to be deposited in a bank to the credit of said Local Finance Corporation. That Blocker had authority to sign checks drawn by the corporation on its home office bank account in appellee bank in payment to other persons, firms, or corporations of obligations owing by Local Finance Corporation and for that purpose his signature, as "auditor" during the period he had the title of auditor and as "comptroller" during the period he had the title of comptroller, was sufficient for that purpose. That as between Local Finance Corporation and its employee, Blocker, he was never given authority or empowered to cash checks payable to said Local Finance Corporation or to receive the cash thereon, unless as to appellee bank such authority was extended by virtue of a resolution duly adopted by the board of directors of Local Finance Corporation on January 9, 1934, which said resolution is still in full force and effect and a certified

copy thereof was delivered to appellee bank on January 12, 1934. Said resolution in part reads as follows:

"BE IT RESOLVED, That any One of the following: President, Secretary-Treasurer, Auditor, of this corporation, be and they are hereby authorized, for and on behalf of said corporation, to open an account with MARION NATIONAL BANK OF MARION, INDIANA, and to draw and sign checks against said account, *and to endorse for deposit or negotiation all negotiable instruments and orders for the payment of money,* which endorsement may be made in writing or by a stamp and without designation of the person so making it.

"AND BE IT FURTHER RESOLVED, That said MARION NATIONAL BANK OF MARION, INDIANA, be and it is hereby authorized and directed to honor and pay any checks so drawn, when so signed, whether such checks be payable to the order of any officer or person signing them, or any of said officers or persons in their individual capacities or not, and whether they are deposited to the individual credit of the officer or person signing them or to the individual credit of any of the other officers or persons or not." (Our italics.)

That during the years, 1937, 1938, and 1939, Local Finance Corporation was the owner of certain checks, 28 in number, which were payable to said corporation; that each and all of said checks in question were delivered by said Blocker to appellee bank on or about the date shown by endorsement of appellee bank on the check, or the perforated cancellation "paid" on the checks where said check bears no endorsement. That at the time Blocker delivered each check to appellee bank, said check bore the following rubber stamp endorsement, to wit: "Pay to the order of Marion National Bank of Marion, Marion, Ind., Local Finance Corp." In addition to said endorsement, three of said checks show the further endorsement, "C. C. Blocker,"

in his handwriting. That at the time of the delivery of each check, the appellee bank paid the full amount of each check in cash to Blocker at his request. That none of the proceeds of any of said checks were credited, or deposited, to said Local Finance Corporation's account by appellee bank. That appellee bank never paid or accounted for any of the proceeds of any of said checks to Local Finance Corporation unless the payment of cash to Blocker over the bank's counter, at the time he presented the checks and received the cash thereon, constituted such payment or accounting. After giving Blocker the cash on each check, appellee bank collected and received the proceeds of each check in full. Blocker did not account to his employer, Local Finance Corporation, for the proceeds of any of the checks so cashed by him but appropriated the proceeds to his own use. Eight of said checks, four of which were dated July 21, 1937, and all aggregating $944.50, were cashed by Blocker in the year 1937. In 1938 Blocker cashed fourteen checks in the aggregate amount of $4378.68; one check cashed in 1938 was for the sum of $2500. During the year 1939 Blocker's defalcations and cashing of checks consisted of cashing six checks between February 7 and July 22 in the aggregate amount of $1027.39. Eleven of said checks, totaling the sum of $4673.98, were each drawn on the appellee bank and were cancelled as paid when the cash was paid to Blocker. After giving Blocker the cash on the seventeen checks which were drawn on other banks, appellee bank endorsed each check and received the money thereon from the drawee bank named in each check.

Thereafter, appellant paid to the Local Finance Corporation the full amount of all said checks so cashed by Blocker and received from said Local Finance Corporation a written assignment of all causes of action

which said Local Finance Corporation had against appellee bank by reason of the cashing of said checks by Blocker.

The record in this case presents two principal and controlling questions: (1) What was and is the legal effect of the endorsement placed upon each of the 28 checks in question to the effect: "Pay to the order of Marion National Bank of Marion, Marion, Ind., Local Finance Corp."? and (2) Under the facts presented by the record in this cause, was appellee bank protected in the cashing of said checks and in paying the cash proceeds thereof to C. C. Blocker by the provisions of § 4 of the Indiana Uniform Fiduciaries Act, being § 31-104, Burns' 1933, § 7712, Baldwin's 1934?

An examination of the authorities discloses that an endorsement such as that above set forth has been construed by the courts of last resort in several states and that such an endorsement has a well-defined and understood meaning in the banking business.

In *Brady on Bank Checks*, 2d ed., page 270, the author has the following to say:

"In some of the cases it appears that the principal has authorized his agent to indorse checks payable to the principal for the purpose of depositing them to the principal's credit. If the authority conferred upon the agent specifies an indorsement in such form that the check when indorsed by the agent in accordance with his authority can be used for no other purpose than a deposit as, for instance, an indorsement to the order of the bank in which the principal's account is kept, then an indorsement in blank by the agent is a forgery and does not transfer title to the check. A bank which, in such circumstances, collects a check on the agent's indorsement in blank, or in any other unauthorized form, and pays the proceeds to the agent will be liable for the amount to the principal."

In the case of *Sims* v. *United States Trust Co.* (1886), 103 N. Y. 472, 9 N. E. 605, the Court of Appeals of New York, in discussing the legal effect of a bank check made payable to the order of a bank, states the law as follows:

"The use of the defendant's name as payee of the check indicated the drawer's intention to lodge the moneys in its custody, and place them under its control, and nothing further than this was inferable from the language of the check. The check, by its terms, authorized the defendant to withdraw from the People's Bank a certain sum, for a purpose not disclosed, but fairly inferable from the nature of the defendant's business.

"The defendant could have refused to receive the deposit, or act as Dr. Sims' agent in transferring the funds from one custodian to another, but, having accepted the office of so doing, it was bound to keep Dr. Sims' moneys until it received his directions to pay them out. The language of the check making the funds payable only upon the order of the defendant imposed upon it the duty of seeing that they were not, through its agency, improperly disbursed after it had received them. They could not safely pay out such funds except under the direction of their lawful owner. This they have never received, unless the proof hereafter referred to shows such authority."

Again, in the case of *Standard Steam Specialty Co.* v. *Corn Exchange Bank* (1917), 220 N. Y. 478, 116 N. E. 386, the same court was considering a case in which the facts were as follows: The plaintiff kept its bank account in a Greenwich bank. It had provided its stenographer, Harriet Cohen, with a rubber stamp with which to endorse checks as follows: "Pay to the order of the Greenwich Bank. The Standard Specialty Co." In discussing the legal effect of the authority of plaintiff's agent to use a rubber stamp in making such an endorsement, the court says:

"But Cohen had authority only to make a restrictive indorsement in order to create the Greenwich Bank the agent of plaintiff to collect the checks. One authorized to make a restrictive indorsement is not authorized to make a general indorsement. *Exchange Bank* v. *Thrower*, 118 Ga. 433, 45 S. E. 316.

"Any person taking checks made payable to a corporation which can act only by agents, does so at his peril, and must abide by the consequences if the agent who indorses the same is without authority, unless the corporation is negligent (*People* v. *Bank of North America, supra*) or is otherwise precluded by its conduct from setting up such lack of authority in the agent as in *Phillips* v. *Mercantile Nat. Bank of N. Y.*, 140 N. Y. 556, 35 N. E. 982, 23 L. R. A. 584, 37 Am. St. Rep. 596.

". . . Cohen had power to make deposits in the Greenwich Bank; she had no power to collect the checks or even to deposit them elsewhere for collection. She was a mere conduit through which the checks received by her employer passed to her employer's bank for collection. The right to indorse was a mere incident to the authority to deposit. Banking customs imply such authority to indorse pro forma from the right to make the deposit to the credit of principal's account, and it may fairly be said that the specific authority to place this restrictive indorsement on the checks added nothing to Cohen's authority to deposit the checks. The indorsement was a necessary and customary incident to the act of making such deposits. The business man who authorizes his clerk to take his checks to his bank for deposit does not vest in her so dangerous a power as to preclude him from setting up her lack of authority if she indorses his name thereon in blank and innocent persons cash the checks for her without inquiry."

In the case of *L. W. Cox & Co.* v. *Chemical Bank & Trust Co.* (1941), 26 N. Y. S. (2d) 38, the court says:

"A pro forma power to indorse for the purpose of making a deposit by itself, is no power at all so far as strangers are concerned. At best, Cox

had power only to make a restrictive indorsement to enable the National City Bank to collect the proceeds of the checks in behalf of the corporation. . . .

"The indorsements were merely by way of a rubber stamp of the corporate name without any written signature, authorized or unauthorized, and without any designation of an officer. This 'pro forma' indorsement would have been altogether appropriate for a deposit in the plaintiff's bank whether placed there by the president or by a clerk delivering the checks to the bank for deposit."

In the case of *Graham* v. *Southington Bank & Trust Co.* (1923), 99 Conn. 494, 121 A. 812, the court was considering a case in which a check was drawn payable to the order of the defendant bank upon another bank with the intent that it be deposited to the plaintiff's account in the defendant bank and thereby transfer funds from the custody of the drawee bank to the plaintiff's account in the defendant bank. The check was delivered to plaintiff's agent who was auditor and in charge of plaintiff's accounting department. The agent did not deposit the check to the account of the plaintiff but endorsed the check and presented it to the defendant bank and requested cash thereon, which was given him by the defendant bank. The court, in discussing the effect of the check being made payable to the order of the defendant bank, says:

"It is claimed that the placing by the plaintiff of these checks, drawn payable to the defendant, in Eyring's hands, gave him apparent authority to secure cash from the defendant upon them. The question of what authority the mere possession of such checks gives an agent of the drawer in relation to a bank payee, has been treated fully and authoritatively in a case presenting the identical situation. In *Sims* v. *United States Trust Co.*, 103 N. Y. 472, 9 N. E. 605, the court speaks as follows

as to what is legally imported between the drawer and the payee bank when such a check is presented by an agent of the drawer to the bank: 'The check upon its face imported the ownership of the moneys represented in it' by the drawer, 'and his desire that its custody should be transferred from' the bank holding it to the payee bank. 'This did not warrant' the payee bank 'in supposing that' the drawer 'thereby intended to pay' the face of the check to the agent, or 'place him for any purpose in possession of the fund. If he had so intended, the check would have been made payable' to the order of the agent, 'and there would have been no need of the agency' of the payee bank 'in the transaction. The use of the bank' as payee of the check indicated the drawer's intention to lodge the moneys in its custody and place them under its control, and nothing further than this was inferable from the language of the check. The check, by its terms, authorized the payee bank 'to withdraw from the' drawee bank 'a certain sum for a purpose not disclosed' by the terms of the check, 'but fairly inferable from the nature of the' payee bank's business, particularly if the drawer was already a depositor of the payee bank. The payee bank 'could have refused to receive the deposit, or act as' the drawer's 'agent in transferring the funds from one custodian to another; but having accepted the office of so doing, it was bound to keep' the drawer's 'moneys, until it received his direction to pay them out. The language of the check making the funds payable only upon the order of the' payee bank 'imposed upon it the duty of seeing that they [the funds] were not, through its agency, improperly disbursed after it had received them. They could not safely pay out such funds except under the direction of' the drawer of the check, 'their lawful owner.' In *Bristol Knife Co.* v. *First Nat. Bank,* 41 Conn. 421, 425, in an analogous situation, we have in substance laid down the same legal principles."

In the case of *Chase & Co.* v. *Norfolk Nat. Bk.* (1928), 151 Va. 1040, the court had under consideration a check

which was made payable to the order of the National Bank of Commerce and drawn on the National Bank of Rocky Mount, Rocky Mount, North Carolina. The check was intended for deposit to the account of Chase & Co. in the National Bank of Commerce, which was named as payee of the check, and delivered to an agent to deposit in the bank. The check was cashed and the proceeds not deposited as intended. In discussing the legal effect of such a check, the Supreme Court of Virginia says:

> "Presuming, therefore, that the name of Chase and Company was properly signed to the check, it was on its face an order to the bank to collect the amount from the Rocky Mount bank to be placed to the credit of the account of Chase and Company in the Norfolk bank, with which it had kept its account for several years. The check could not be made available for this or any other purpose without the endorsement of the Norfolk bank. When the bank endorsed it and so made it collectible, if the proceeds were given to Custis or anyone else it was a diversion from the proper disposition of the fund, and the bank remained liable to Chase and Company for the amount of the check as soon as the money came in the possession of the bank from the Rocky Mount bank, and upon a failure to pass the proceeds to the account of Chase and Company."

For other authorities which show that the use of such an endorsement on a check as we are now considering has a well recognized and understood meaning in the banking business to the effect that such checks are for deposit only and are not to be cashed, we refer to the cases of *Rosenberg* v. *Germania Bank* (1904), 88 N. Y. S. 952, 953; and *Rivers* v. *Liberty Nat. Bank* (1926), 135 S. Car. 107, 133 S. E. 210, 212.

Again, in the case of *Robbins* v. *Passaic Nat. Bank*

*and Trust Co.* (1932), 109 N. J. L. 250, on page 252, the New Jersey court says:

> "There can be no doubt that as a fundamental proposition of law a check drawn to the order at a bank precludes the diversion of the proceeds of such check to a use other than that of the drawer and such diversion can only be justified by the proof of authority from the drawer to so divert."

See also to the same effect *Palmetto Compress & Wareh. Co.* v. *Citizens & So. N. Bank* (1942), 200 S. Car. 20, 20 S. E. (2d) 232.

Referring to § 34 of the Indiana Negotiable Instruments Act, being § 19-305, Burns' 1933, § 12851, ■ Baldwin's 1934, we find that a special endorsement is defined as follows:

> "A special indorsement specifies the person to whom, or to whose order, the instrument is to be payable; and the indorsement of such indorsee is necessary to the further negotiation of the instrument. An indorsement in blank specifies no indorsee, and an instrument so indorsed is payable to bearer, and may be negotiated by delivery."

Clearly, the endorsement which we have under consideration comes within the above definition and is a special restrictive endorsement under the authorities heretofore cited.

Referring to the stipulation of facts, we find that Blocker had authority to sign checks but that as between his employer, Local Finance Corporation, and himself, he was never given authority or empowered to cash checks which were payable to the Local Finance Corporation or to receive the cash thereon and that as between appellee bank and Local Finance Corporation and Blocker, Blocker had not been given any authority or empowered to cash checks payable to Local Finance

Corporation or to receive the cash on such checks, unless such authority was given by virtue of the language contained in a resolution adopted by the board of directors of Local Finance Corporation on January 9, 1934. Referring to this resolution, we find that: "any One of the following: . . . Auditor, of this corporation, be and they are hereby authorized, for and on behalf of said corporation, to open an account with Marion National Bank of Marion, Indiana, and to draw and sign checks against said account, *and to endorse for deposit or negotiation all negotiable instruments and orders for the payment of money,* which endorsements may be made in writing or by a stamp and without designation of the person so making it." (Our italics.) The foregoing language is clear and explicit and does not contain any words purporting to authorize any of the named officers, which included Blocker, to cash checks which were payable to the corporation or to receive the cash thereon. Since the language of the resolution expressly limits the authority granted "to endorse for the purpose of deposit, or negotiation," it is crystal clear that Blocker was not authorized to demand and receive the cash upon any checks endorsed payable to the order of the appellee bank, unless the cashing of such checks constituted a "negotiation" thereof, within the meaning of that word as used in the resolution of January 12, 1934, as applied to bank checks.

Counsel for appellee bank contend that the act of Blocker in cashing the checks at appellee bank, to whose order the checks were endorsed, constituted a "negotiation" of the checks within the meaning of that word as contained in the resolution of January 12, 1934. Therefore, counsel assert that Blocker was expressly authorized and empowered by said resolution to place the special endorsement upon the checks, present the

checks to appellee bank, request payment and receive the cash thereon, instead of having the checks deposited in said bank in the account of, and to the credit of, his employer, Local Finance Corporation. This requires us to determine what is meant by the term "negotiation" as applied to bank checks. In the case of *First National Bank* v. *United States Nat. Bank* (1921), 100 Ore. 264, 197 P. 547, 14 A. L. R. 479, on page 492, the court says:

"Manifestly, presentment to the drawee for payment is not a negotiation of a check; for payment transmutes the paper from a negotiable instrument into a mere cancelled voucher. When paid the check has run its course as a negotiable instrument."

In the case of *National Bank of Commerce* v. *Mechanics' Am. Nat. Bank* (1910), 148 Mo. App. 1, 127 S. W. 429, on page 434, the court says:

"Nor do we think that indorsements and presentation of these checks to the plaintiff bank was in any sense a negotiation of them. They were presented to the drawee by the defendants for payment, not in the line of negotiation, and they were paid, not bought."

In the case of *National Bank of Commerce* v. *Farmers' & Merchants' Bank* (1910), 87 Neb. 841, 128 N. W. 522, 523, the Supreme Court of Nebraska was considering the meaning of the term "negotiation" as contained in the Uniform Negotiable Instruments Act, which had been adopted in Nebraska. The court says:

"What is meant by 'negotiating' an instrument within the meaning of the statute? . . . If A. gives B. a check on C. Bank, and B. presents the check at the counter of C., no negotiation is necessary or had. He simply demands and receives payment; but, if B. goes to D. store and buys a bill of goods,

and tenders the indorsed check in payment, he negotiates the check. The difference is clear and well defined. The presentation by defendant of the check in controversy for payment was not a 'negotiation' of the check within the meaning of the statute quoted."

See also *Aurora State Bank* v. *Hayes-Eames Elevator Co.* (1911), 88 Neb. 187, 129 N. W. 279; *First National Bank* v. *Bank of Cottage Grove* (1911), 59 Ore. 388, 396, 117 P. 293.

We have been unable to find any authorities holding to the contrary and no such cases have been cited by appellee in its brief.

Referring to the record in this case, we find that 11 of the 28 checks which Blocker cashed and for which recovery is sought in this litigation, and totaling the sum of $4,673.98, were each drawn on the appellee bank and were canceled as paid when the cash was paid to Blocker. Clearly, under the foregoing authorities there was no negotiation as to these 11 checks. The other 17 checks which were drawn on other banks had been endorsed payable to the order of appellee bank. It may be that Blocker had sufficient authority under the resolution of January 12, 1934, to endorse each of the 17 checks drawn on other banks in such a manner as to entitle appellee bank to pay the cash thereon to Blocker, but this was not done. The effect of the endorsement above mentioned was restricted to the deposit of such check in appellee bank in the account of Local Finance Corporation, and such further negotiation thereof, only, as was necessary to enable appellee bank to collect thereon from the drawee bank. Therefore, we hold that, under the authorities heretofore cited, none of the 28 checks were negotiated

within the meaning of that word as used in the resolution of January 12, 1934, when they were endorsed payable to the order of appellee bank and were presented to that bank for payment as requested by Blocker.

This brings us to the second and final question as to whether or not appellee bank was protected in its cashing of these checks by the language contained in § 4 of the Indiana Uniform Fiduciaries Act. Appellee makes no contention either in its brief or upon oral argument of this cause that any of the other sections of this act were applicable. Referring to § 31-104, Burns' 1933, which is § 4, we find that it reads in part as follows:

> "If any negotiable instrument payable or indorsed to a fiduciary as such is indorsed by the fiduciary, *or if any negotiable instrument payable or indorsed to his principal is indorsed by a fiduciary empowered to indorse such instrument on behalf of his principal, the indorsee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in indorsing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary* unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith. . . ." (Our italics.)

Appellee relies exclusively upon the italicized language of § 4 above quoted as affording it protection in the cashing of the 28 checks by Blocker. We agree with appellee that Blocker was a fiduciary within the meaning of § 1 of the Indiana Uniform Fiduciaries Act, being § 31-101, Burns' 1933. However, we find that § 12 of the Indiana Uniform Fiduciaries Act, § 31-112, Burns' 1933, § 7720, Baldwin's 1934, provides:

"In any case not provided for in this act, the rules of law and equity, including the law merchant and those rules of law and equity relating to trusts, agency, negotiable instruments and banking, shall continue to apply."

Therefore, in view of the authorities heretofore cited and from which we have quoted rather extensively in this opinion, which hold that the endorsement upon each of the checks involved, which reads: "Pay to the order of Marion National Bank of Marion, Marion, Ind.," was a special restrictive endorsement, having a well defined meaning in the banking business, and only authorized that bank to deposit the amount of the checks to the credit of Local Finance Corporation in said bank, and that the cashing of a check at the bank at which it is payable does not constitute a negotiation of the check, and having in mind the stipulation of facts, heretofore referred to, which expressly states that Blocker was not given any authority to cash checks payable to the order of his employer or to receive the cash on any such checks, and that his authority was expressly limited to endorsement for deposit or negotiation, we are constrained to hold that Blocker, even though a fiduciary, was not empowered to, and did not in fact, place upon any of the checks an endorsement which authorized appellee bank to pay to him the cash represented by each check and therefore the provisions of § 31-104, *supra,* are not applicable to the facts presented by the record in this case.

No question of estoppel is presented by the pleadings or the stipulation of facts.

For the reasons stated and under the authorities cited, the finding and decision of the lower court was contrary to law and the judgment must be reversed.

Judgment of the lower court is hereby reversed with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 64 N. E. (2d) 583.