STATE OF MARYLAND *vs.* JOHN A. DENTON. SAME *vs.* SAME. SAME *vs.* SAME.

*Embezzlement—Clerk of County Commissioners—Indictment.*

Section 80, of Article 27 of the Code of Public General Laws, enacts that "any person holding office in this State, whether elected, or appointed by the Governor, by the corporate authorities of Baltimore, or by any other authority legally authorized to make such appointment, who shall fraudulently embezzle or appropriate to his own use money * * * which he is by law bound to pay over, account for, or deliver to the Treasurer of this State, or to any other person by law authorized to receive the same, shall be guilty of a misdemeanor." HELD:

That this section does not apply to a clerk to the County Commissioners who embezzles money he has received on their account, and as their agent or servant.

The County Commissioners being a corporation as declared by section 1 of Article 25, of the Code, embezzlement by their clerk is within the scope of section 75 of Article 27 of the Code, which provides that "whosoever, being a * * * clerk to any person, or to any body corporate, * * * shall fraudulently embezzle any money, * * * shall be deemed to have feloniously stolen the same."

A count in an indictment for embezzlement that charges the larceny of one hundred and two dollars and seventy-two cents, "current money, a more particular description of which said money the jurors aforesaid have not and cannot give," is too indefinite and vague, and is properly quashed.

APPEALS AS UPON WRIT OF ERROR, from the Circuit Court for Howard County.

There were three indictments, but they were practically the same; and the questions presented being identical, they were treated as arising in one case. The case is stated in the opinion of the Court.

The causes were argued before MILLER, ROBINSON, IRVING, BRYAN, MCSHERRY, and BRISCOE, J.

*Joseph D. McGuire, State's Attorney for Howard County,* and *Henry E. Wootten,* (with whom was *Wm. Pinkney Whyte, Attorney-General,* on the brief,) for the appellant.

*Charles K. Dorsey, Sebastian Brown,* and *Edgar H. Gans,* for the appellees.

MCSHERRY, J., delivered the opinion of the Court.

The appellee was indicted by the grand jury of Howard County for embezzlement. The indictment alleged, in substance, that in July, 1889, Denton was clerk to the County Commissioners of Howard County, and that he received and took into his possession for and on account of his employers, the said County Commissioners, a certain sum of money, the property of the County Commissioners, and that he thereafter fraudulently and feloniously embezzled, secreted, and made away with the same. This count of the indictment was framed under and founded on *sec.* 75, *Art.* 27 *of the Code.* The second count charges the larceny of one hundred and nine dollars and seventy-two cents, "current money, a more particular description of which said money the jurors aforesaid have not and cannot give." Each count was demurred to, and the Circuit Court having sustained the demurrer, the State has brought the record into this Court by petition as upon writ of error.

The 75*th sec. of Art.* 27 *of the Code* provides that "whosoever, being a cashier, servant, agent, or clerk to any person, or to any body corporate, or being employed for the purpose or in the capacity of a cashier, servant, agent, or clerk by any person or body corporate, shall fraudulently embezzle any money, * *. * * * which, or any part whereof, shall be delivered to or received, or taken

State *vs.* Denton.

into possession by him, for or in the name or on the account of his master or employer, shall be deemed to have feloniously stolen the same from his master or employer," &c.   It is insisted that a clerk to the County Commissioners is a public officer and, therefore, not within the purview of this statute, though it is not conceded that *sec.* 80 of the same Article is applicable to him.   This latter section enacts, that "any person holding office in this State, whether elected or appointed by the Governor, by the corporate authorities of Baltimore, or by any other authority legally authorized to make such appointments, who shall fraudulently embezzle or appropriate to his own use money, funds, or evidences of debt which he is by law bound to pay over, account for, or deliver to the treasurer of this State, or to any other person by law, authorized to receive the same, shall be guilty of a misdemeanor," &c.   By *section* 1, *of Art.* 25 *of the Code* it is provided that "the County Commissioners of each county in this State are declared to be a corporation, and shall have full power to appoint   *   *   *   road supervisors, collectors of taxes, trustees of the poor, *a clerk to their board,* and all other officers, agents, and servants required for county purposes," &c.   By the local laws of Howard County, *Art.* 14, *sec.* 44, Public Local Laws, it is enacted that "the County Commissioners may appoint a clerk, and allow him a salary not exceeding five hundred dollars per annum; and they may prescribe his duties, and may require him to give bond for the faithful performance of those duties."

We think it perfectly clear that *sec.* 80, *of Art.* 27 of the Code has no application to the case at bar, and unless *sec.* 75 is broad enough to cover it, there is no provision in the criminal law of Maryland to reach the appellee. As a consequence, he, and a very large class of other persons holding similar positions of a public or *quasi*

public character, could embezzle with absolute impunity. This, it may be safely assumed, was never intended by the Legislature; and the statutes ought not to be so construed as to bring about such a result, if they are capable of being fairly interpreted in a way to embrace every fraudulent misappropriation on the part of those who hold appointments or employments or relations of trust. It is true that *sec.* 80 applies to public officers, but not to *all* public officers. That section is restricted and confined to such public officers as are required by law to account, pay over, or deliver to the treasurer of this State, or to any other person by law authorized to receive the same, any money, funds, or evidences of debt, &c. If the officer be a public officer, and yet not be required by law to account with or to pay over to the State treasurer, or to some other person by law authorized to receive the money, he is not within the 80*th sec.*, even though he should embezzle the funds which came into his hands. And he is not within the 80*th sec.* because he does not belong to that class of public officers described in and intended to be affected by that section. Now, the law imposes on the clerk to the County Commissioners no duty to collect or to pay over any money, either to the State treasurer or to any one else; and, whether he be treated as a public officer or a private servant, he does not fall within the class at which *sec.* 80 was manifestly levelled. His tenure of the position is at the will of the board appointing him. His duties, with two or three unimportant exceptions under *Art.* 51, *sec.* 6, *and Art.* 81, *secs.* 42 *and* 43, *of the Code,* are no where defined in the Code, and his compensation, payable out of the public revenues of the county, is fixed and regulated by the County Commissioners. He exercises no power, apart from the exceptions just indicated, which is not performed for and on behalf of his employers. He has no independent functions, and no duties

State *vs.* Denton.

beyond those prescribed from time to time by the Commissioners who have appointed him.    He is in every respect subordinate to them, and in no particular independent of them.    Every act that he does is done, not in virtue of an independent official position held by him, but as the clerk, the agent or the servant of a superior.    He acts for them and as they direct, and not otherwise.    He is, in fine, just what *sec.* 1, *Art.* 25 calls him, a clerk to a body corporate, appointed by that body, subject to its authority, and, consequently, its employé.    Between him and the County Commissioners all of the ordinary attributes of service exist.

The reasons just given for excluding the appellee from the operation of the 80*th sec.* bring him clearly within the scope of the 75*th sec.*    He is a clerk to a body corporate and as such clerk, according to the concessions of the demurrer, he fraudulently embezzled money received by him for and on account of his employer.    The fact that he is a clerk to a public corporation does not put him outside of the 75*th sec.* because that section is broad enough to embrace public as well as private corporations; nor does the circumstance that his salary is paid out of the public revenue of the county affect in the slightest degree his liability under this statute, because the mode of payment does not determine the character of the office held—that is, does not make it an independent office, if it be not otherwise so.    The *Act* of 1820, *ch.* 162, as amended by the *Acts of* 1880, *ch.* 458, and 1886, *ch.* 310, forms *sec.* 75, *of Art* 27 *of the Code.*    As originally passed it was nearly an exact transcript of 39 *Geo. III, ch.* 85, adopted in 1799.    In 1818, (two years prior to the passage of the *Act of* 1820, *ch.* 162,) the case of *Rex vs. Squire, Russ. & Ry.,* 349, arose under 39 *Geo. III, ch.* 85.    In that case (which is also reported in 2 *Stark. N. P. C.,* 349,) the prisoner was tried before Mr. Justice BAYLEY on an indictment for embezzling fourteen one

guinea notes received by the prisoner by virtue of his employment as clerk and servant to eight persons who were overseers of the township of Leeds. It appeared that the prisoner had acted for several years for the overseers of the township of Leeds at a yearly salary, under the name of their accountant and treasurer; and as such had received and paid all the money receivable or payable on their account and had rendered to them every week a weekly account, purporting to be an account of whatever he had received and paid during that period. He received the fourteen notes from John Senior, being money due from him as overseer of another township for money supplied by the township of Leeds to a pauper in Leeds belonging to Senior's township, and the prisoner had not entered the receipt of this money in his weekly accounts. He was convicted, but, it having been urged that the prisoner was not such a clerk or servant as the statute contemplated, the learned Judge saved the point for the consideration of the Judges. In Easter term, 1818, the Judges met and held the conviction right. They were of opinion that the prisoner was a clerk and servant within 39 *Geo. III, ch.* 85. The duties of the overseers of the poor were of a public character, and extended to the levying and collecting and disbursing of rates or taxes for the support of the poor; and the overseers themselves were public officers. 1 *Bl. Com., Ch.* 9, *pp.* 337, 359. Their accountant and treasurer held towards them precisely the same relation that a clerk holds towards the County Commissioners. With this construction of 39 *Geo. III, ch.* 85, before them the General Assembly passed the *Act of* 1820, *ch.* 162, in almost the same language used in the Act of Parliament, an ddoubtless intended it to·have the same interpretation. If that interpretation be adopted, the appellee is clearly liable under *sec.* 75, provided the averments of the indictment be proved. No other construction of the

statute will reach the mischiefs which it was obviously designed to remedy. If *sec.* 75 be confined to private employés its language must be narrowed, or words must be imported into it which are not there now.    This is forcibly illustrated by the case of *Coats vs. The People,* 22 *N. Y.,* 245, where the New York statute was held not to apply to the keeper of a poor house appointed by the superintendent, a public official, if not a corporation, because the statute by express words confined the criminal liability to the clerk or servant of a private person. In addition to this there would then be no statute in force for the punishment of any public defaulter who was not an independent officer, other than *sec.* 47, *of Art.* 27, which *does not apply to the case at bar.*    For example, deputies in the office of the clerks of the various Courts of the State, and in the office of the registers of wills, are public officers, in the sense that they are paid their salaries out of the public revenues; but these deputies, whose appointment is provided for by law are not required by any law to account for or to pay over public money to the State treasurer, or to any other person.    Now, if one of these deputies should embezzle money paid to him for or on account of his employer for the use of the State, it is clear he would not fall within the class of officers described in *sec.* 80, because he is not required by law to account to the State treasurer, or to any one else for any money whatever.    Yet it can hardly be contended that he would not be punishable under *sec.* 75, as the agent, or servant or clerk of his employer.    The attributes of service between such a deputy and his employer are no more distinctly marked or clearly defined than in the case at bar.    In each instance the employé is merely an employé, and in no sense an independent officer.    If he is an independent officer, of course, he is not and cannot be a mere servant.    Therefore in an indictment under 7 *and* 8 *Geo. IV, ch.* 29, *sec.* 47, it was held that

the prisoner was not liable because he was an *indepen-dent* officer. *Reg. vs. Truman,* 2 *Cox Crim. Cases,* 306.

The case of *Reg. vs. Lovell,* 2 *Moody & Rob.*, 236, was strongly pressed upon us by the appellee's counsel, but it decides nothing in conflict with the views we have expressed. The prisoner was indicted for larceny under 7 *and* 8 *Geo. IV, ch.* 29, *sec.* 46, and for embezzlement under 2 *W. IV, ch.* 4. *Sec.* 46 of 7 *and* 8 *Geo. IV, ch.* 29, provided for the punishment of depredations committed by clerks and servants in cases not punishable capitally, and enacted "that if any clerk or servant shall steal any chattel, money * * * * * belonging to or in the possession or power of his master, every such offender," &c. should be punished in the manner there prescribed. The prisoner was clerk to the collector of customs at the Port of Falmouth, and was appointed by the commis-sioners of customs under 3 *and* 4 *W. IV, ch.* 51, and it was his duty to receive and place in the collector's box each day moneys received in payment of customs. He embezzled some of the moneys. COLERIDGE, J., had great doubt "whether or no 7 and 8 Geo. IV, ch. 29, sec. 46, was meant to include public servants of the Crown, such as the prisoner." He further said: "It would seem intended to protect the private dealings of the subjects only against their clerks and servants;" and he added: "But it is unnecessary to determine that point, as I have no doubt that this is a case upon the facts within the latter Act," the Act of 2 *W. IV, ch.* 4. Our *Act of* 1820, *ch.* 162 was not taken from 7 *and* 8 *Geo. IV, ch.* 29, which was passed in 1827, but from 39 *Geo. III, ch.* 85, which is very much broader and more comprehen-sive than 7 *and* 8 *Geo. IV, ch.* 29. *Sec.* 46 of the latter Act related, not to embezzlement as *sec.* 47 did, but to *larceny* by clerks and servants. But beyond this, COLE-RIDGE, J., expressly refrained from determining whether the prisoner was within 7 *and* 8 *Geo. IV, ch.* 29, *sec.* 46,

State *vs.* Denton.

or not, and, hence, the case cannot be treated as a decision on that point.

The case of *State vs. Connelly*, 104 *N. C.*, 794, was also much relied on by the appellee. In that case the clerk of a Superior Court of North Carolina was indicted for embezzlement under a statute which declared that, "if any officer, agent, clerk, employé, or servant of any corporation, person or co-partnership" shall embezzle he shall be guilty of felony. And it was held that as the clerk of the Superior Court was not an officer of a corporation, but a public officer, he was not within the terms of the statute. This is obviously a different case from the one at bar.

From the views we have expressed it follows that in our opinion the ruling of the Circuit Court in sustaining the demurrer to the first count of the indictment was erroneous.

The second count was properly quashed. The description of the money alleged to have been stolen was entirely too indefinite and vague. 2 *Bish. Cr. Proc.*, sec. 703; *Steuart vs. State*, 62 *Md.*, 413; *Kearney vs. State*, 48 *Md.*, 23.

The judgment in each of these three cases must be reversed, because of the error committed in sustaining the demurrer to the first count in each indictment, and the cases will be remanded for new trials.

*Judgments reversed, and*
*new trials awarded.*

(Decided 17th June, 1891.)