LOKER *v.* STATE OF MARYLAND

[No. 323, September Term, 1967.]

*Decided September 27, 1968.*

*Motion for rehearing filed October 25, 1968; denied November 5, 1968.*

The cause was argued before HAMMOND, C. J., and BARNES, SINGLEY, SMITH, JJ. and KEATING, J., ▮ Associate Judge of the Second Judicial Circuit, specially assigned, RUTLEDGE, J., Associate Judge of the Fourth Judicial Circuit, specially assigned, and CLAPP, J., Associate Judge of the Sixth Judicial Circuit, specially assigned.

*James E. Hogan,* with whom was *Arthur J. Hilland* on the brief, for appellant.

*Frank A. DeCosta, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General* and *Joseph D. Weiner, State's Attorney for St. Mary's County,* on the brief, for appellee.

CLAPP, J., delivered the majority opinion of the Court BARNES, J., dissents. Dissenting opinion by Barnes, J., at page 689 *infra*.

This case is here on writ of certiorari to the Court of Special Appeals issued pursuant to Sec. 21A of Art. 5 of the Annotated Code of Maryland (1968 Repl. Vol.). On May 24, 1966, the appellant was convicted by a jury in the Circuit Court for St.

Mary's County on the second and fourth counts of an indictment, which counts, respectively, charged a violation of Art. 27, Sec. 129 of the Code (embezzlement by a clerk, servant, or agent or officer) ; and the commission of the crime of grand larceny. He was sentenced to imprisonment for a term of five (5) years for each offense, the sentences to run concurrently, and an appeal was noted to this Court and received Docket No. 380—September Term, 1966. After the brief for the appellant had been here filed, the case was transferred to the then newly created Court of Special Appeals which affirmed the judgment. *Loker v. State*, 2 Md. App. 1, 233 A. 2d 342.

Following this affirmance a petition for the writ of certiorari was filed in this Court setting forth grounds hereinafter specified in detail and it was ordered on the 16th day of November, 1967, that the writ should issue and that the case be transferred to the regular docket as No. 323—September Term, 1967.

In his petition, the appellant raises the following issues :

## I

The writ should be issued so that this Court may review that aspect of the Special Court's decision which brushed aside petitioner's showing that the indicting grand jury was not selected in the manner prescribed by the statutes of this State.

## II

The writ should be issued in this case because the Special Court has disregarded the ruling of this Court in *Schowgurow v. State*, 240 Md. 121, 213 A. 2d 475 (1965) ; and *State v. Madison*, 240 Md. 265, 213 A. 2d 880 (1965).

## III

The writ should be issued to enable this Court to review the ruling of the Special Court to the effect that a public official who embezzles public funds can be prosecuted under either the general embezzlement statute or the statute condemning embezzlement by a public official.

## IV

The writ should be issued so that this Court can review the ruling of the Special Court to the effect that a public official who

removes public funds from a safe in *his* possession commits larceny rather than embezzlement.

## V

The writ should be issued so that this Court can review the decision of the Special Court that the so-called "less cash" transactions constituted a crime against the Town, and not against the two banks involved.

## VI

The writ should be issued so that this Court can review the conclusion of the Special Court that the State met its burden, as to the larceny conviction, of adducing circumstantial evidence which, "taken together, must be inconsistent with, or such as to exclude, every reasonable hypothesis or theory of innocence."

## THE MOTION TO DISMISS THE INDICTMENT

Appellant's issues I and II were raised in the Circuit Court by a motion to dismiss the indictment, which motion was overruled, after hearing and before trial on a not guilty plea pursuant to Maryland Rule 725. They were fully and adequately dealt with by the Court of Special Appeals which found no error in the denial of the motion to dismiss in which ruling we concur for the reasons stated by that Court. 2 Md. App. 5-16, 233 A. 2d, 346-352. That Court neither brushed aside the contentions of the appellant nor disregarded the rulings of this Court.

## THE FACTS

In view of the careful and detailed summary of the facts upon which this prosecution is based, found in the opinion of the Court of Special Appeals, 2 Md. App. 16-20, 233 A. 2d 352-354, we deem it unnecessary to repeat them here and shall proceed to a discussion of the remaining issues raised by the petition for the writ of certiorari.

## THE CONVICTION OF EMBEZZLEMENT

(a) The statutes involved.

The appellant contends under his issue III that he, as treasurer of the Town of Leonardtown, was a public officer within the meaning of Sec. 138 of Art. 27 of the Code (embezzlement

by elected or appointed public officers required by law to account) and, therefore, could not be prosecuted and convicted under Sec. 129 of Art. 27 proscribing embezzlement by cashiers, servants, agents, officers or clerks to any body corporate. The Court of Special Appeals held that the appellant was a public officer within the meaning of Sec. 138 but that he could, also, be tried and convicted under Sec. 129. We agree with the affirmance of the conviction under Sec. 129 but not for the reasons stated by the Court of Special Appeals.

For the purposes of this opinion, we accept, without deciding, the assumption of the parties and of the Court of Special Appeals that the appellant was a public officer within the meaning of Sec. 138 and proceed to a discussion of his contention that public officers may only be prosecuted under that section and not under Sec. 129.

An examination of the legislative and judicial history of the two sections demonstrates the fallacy of this contention. Sec. 129 was first adopted by Chapter 162 of the Acts of 1820 and punished embezzlement by a "cashier, servant, agent or clerk * * * to any person or persons whosoever, or to any body corporate or politic." Here, it should be noted that officers of neither public nor private corporations were subject to prosecution thereunder.

Sec. 138 relating to embezzlement by the described public officers was first enacted by Chapter 196 of the Acts of 1854 (erroneously designated in the 1967 Replacement Volume of the 1957 Code as Ch. 196 of the Acts of 1884). Obviously, at that time there was neither conflict nor inconsistency between the two Acts, because the Act of 1820 had no application to public officers of bodies politic as distinguished from cashiers, servants, agents or clerks.

Both Acts were codified as Secs. 49 and 50 of Art. 30 of the Public General Laws of 1860 in which the phrase in the 1820 Act, "any body corporate or politic" appears as "any body corporate." This Code was adopted by the General Assembly by Chapter 1 of the Acts of 1860 in lieu of and as a substitute for all the Public General Laws and the Public Local Laws, heretofore passed by the Legislature of Maryland. Appellant,

therefore, argues that this change in phraseology was intended to eliminate bodies politic from coverage under Sec. 129.

This contention is answered by the decision of our predecessors in *State v. Denton,* 74 Md. 517, 22 A. 305 and *Denton v. State,* 77 Md. 527, 26 A. 1022, holding that embezzlement by a clerk to the county commissioners is punishable under that section. In the former it was contended, just as here, that the appellant was a public officer, not subject to prosecution under Sec. 75 (now Sec. 129) although it was not conceded that he was subject to prosecution under Sec. 80 (now Sec. 138). In holding that he was not a public officer, but, as clerk, was subject to prosecution under present Sec. 129, the Court said, at page 521 of 74 Md., "The fact that he is clerk to a public corporation does not put him outside of Sec. 75 (now Sec. 129), because that section is broad enough to embrace public as well as private corporations."

It should be noted that at the time of that decision in 1891, Sec. 129 did not include officers as distinguished from cashiers, servants, agents or clerks. Thus the reason is apparent why the State Treasurer, indicted under Sec. 138, could not be charged under Section 129. See *State v. Archer,* 73 Md. 44, 20 A. 172 (1890).

With this background in mind, we turn to a consideration of Chapter 329 of the Acts of 1914. That Act amended Sec. 129 to include officers of any body corporate among those within its purview. In view of this Court's decision in *Denton,* it is apparent that officers of public as well as private corporations were intended by the Legislature to be included in the section.

There is no dispute, nor could there be in view of Sec. 94 of Art. 19 of the Code of Public Local Laws (Flack, 1930) that the Commissioners of Leonardtown are a public body corporate. We, therefore, hold that the appellant, even though assumed to be a public officer was subject to prosecution under Sec. 129. It is unnecessary to decide whether he, also, could be prosecuted under Sec. 138.

(b) The alleged variance.

As his fifth issue under the embezzlement conviction, the appellant contends that there is a fatal variance between the allegations of the second count of the indictment and the proof.

This second count alleges embezzlement of United States Currency, "the property of the said Commissioners of Leonardtown."

There was evidence that the appellant, from time to time, received checks on account of the Town for taxes, water rents, etc., that these checks were restrictively endorsed for deposit only to the account of the Town and listed on a deposit slip for deposit in the Town's accounts. On the deposit slip the appellant designated the total amount of the checks with the notation "less cash" and upon presenting the deposit to the bank received, in cash the amount so designated by him. Only the difference between the total amount of the checks and the cash received by him was credited to the Town's accounts. There was testimony that in some instances, the appellant asked a teller receiving deposits in this fashion to give him larger bills and said he was going to put them in the other bank. In fact, no deposits were made in the Town's other account. The appellant urges that the banks were obligated to credit the full amount represented by the checks to the accounts in the name of the town because of the restrictive endorsement of them for deposit only and that since this was not done, the cash given the appellant without authority was not the Town's money but the bank's money, the banks being liable to the Town for the full amount of the checks when they were collected. This argument is predicated upon the Code, Art. 11, Sec. 121 in effect at the time of these transactions providing that an endorsement of an item by a depositor "for deposit" was deemed a restrictive endorsement and indicated that the endorsee bank was an agent for collection and not the owner of them.

The Court of Special Appeals considered and rejected this argument and we agree with its decision and the reasons therefor.

We point out further that there is no specific requirement in Sec. 129 of Art. 27 that ownership of the money embezzled be either alleged or proved, the statute only requiring that the money, "shall be delivered to or received, or taken into possession by him for or in the name or on account of his * * * employer." It was judicially determined that the ownership of such money must be alleged in the indictment in *State v. Tracey*,

684

73 Md. 447, 21 A. 366, because the statute makes its violation larceny and the common law crime of larceny required an allegation of ownership of the stolen property. The Court of Special Appeals quite rightly pointed out that in indictments for larceny an allegation of the ownership of stolen goods may be supported by proof of any legal interest or special property in the goods, *Richardson v. State*, 221 Md. 85, 156 A. 2d 436, and we feel that no more stringent requirement with respect to embezzlement should be applied than to a claim of variance with respect to a charge of larceny.

Moreover, we point out that, even accepting the contention of the appellant that the money in the cash drawer of the teller, before delivery to the appellant, belonged to the bank, it is clear that this teller when such money was delivered by him to the appellant intended to pass title thereto to the Town. It can hardly be contended that this teller intended to deliver this cash for appellant's personal use. A secret intent on the part of the appellant to appropriate this money to his own use can hardly be used by the appellant as an argument to defeat a charge of embezzlement of the Town's money. Compare *Territory v. Hale,* 13 N. M. 181, 81 Pac. 583, 13 Ann. Cas. 551, a case dealing with embezzlement under the New Mexico statute. It is not in point on the facts but does deal with the ownership of monies improperly drawn from the general account of a county. It was there stated at page 190 as follows:

"But when a check is drawn there is a segregation of that much money from the general funds of the bank which becomes the property of the depositor. This may be placed to the credit of the payee of the check, or it may be handed him in money, or otherwise disposed of as the parties may elect. *But for a space of time, however, the money of the depositor is being dealt with * * * *.*" (Emphasis supplied)

So, also, here when the teller pursuant to the "less cash" deposit slip, segregated funds belonging to the banks and delivered such funds to the appellant, title thereto was in the Town of Leonardtown for a period of time however short. Cf., also, *State v. Lockie,* 43 Idaho 580, 253 Pac. 618. Reliance upon the

intricacies of civil liability as between the Town of Leonardtown and the banks has little relevance to the criminal charge here involved and the question of guilt or innocence is not dependent upon the many isuses that can be raised in connection with the deposit of commercial paper, title thereto and the right to charge back credit given. For a discussion of these many issues that we find not relevant to a criminal trial for embezzlement see 10 Am. Jur. 2d, *Banks,* para. 402-413 inclusive. Civil liability as between the Town and the banks is an issue completely collateral to the criminal charge of embezzlement.

We hold, therefore, as did the Court of Special Appeals, "that there was sufficient evidence for the jury to find that the Town was the owner or had a legal interest or special property in the money and that therefore there was no fatal variance between the allegata and the probata."

## *THE CONVICTION OF LARCENY*

(a) The sufficiency of the evidence.

The sixth issue of the appellant contends that the State failed to meet its burden as to the larceny conviction of adducing circumstantial evidence which, taken together, must be inconsistent with, or such as to exclude, every reasonable hypothesis or theory of innocence. This issue was fully discussed by the Court of Special Appeals which found no error in the denial of appellant's Motion for Judgment of Acquittal overruled by the Circuit Court. We concur in the holding and reasons of the Court of Special Appeals found in 2 Md. App. 25-29, 233 A. 2d 357-359.

(b) The possession of the funds allegedly stolen.

Appellant's fourth issue claims that the monies allegedly stolen, were taken from a safe in his possession and therefore, the crime committed, if any, was embezzlement rather than larceny. This issue presents the dilemma that Judge Prescott in his concurring opinion, prophesied would result from the decision of this Court in *Nolan v. State,* 213 Md. 298, 131 A. 2d 851, and discussed in 18 Md. L. R. 235. The Court of Special Appeals after an able discussion of the authorities decided this issue against the appellant and we agree with the holding of that Court but not with its reasons.

The entire argument of the appellant rests upon his contention that "the common law of larceny already is burdened with a number of aberrant doctrines; it does not need another. Specifically, it can do without a doctrine that theft by a corporate or public officer of funds to which he alone has access and which are received by virtue of his office is larceny."

He further argues, "that the facts in this case establish that the receptacle involved, the Town's safe, was itself in his possession as opposed to that of the Town. Since this was true, the funds, when placed in the safe by his secretaries or by him, remained in his constructive possession, so that any subsequent abstraction by him from the safe would be embezzlement, and not larceny."

The entire argument of the appellant is predicated upon a false premise, that is, the exclusive possession in himself of the safe and the funds therein. The record, however, is to the contrary. The safe, itself, at least after the formation of appellant's first law partnership was kept in the office of his partner's secretary who did most of the Town's collections and bookkeeping and was not in the office of the appellant. She, in fact, kept the Town's receipt books on her desk and each morning opened the safe.

Following the formation of appellant's second law partnership the safe was kept not in the office of the appellant but in a room just off the partnership reception room where there was a secretary. The office manager of the partnership sometimes handled Town business and on Saturdays when, apparently, only some of the partners and secretaries would be present, collected town taxes and put them in the desk drawer until the necessary bookkeeping entries could be made by a secretary of the firm. All secretaries of the firm and all partners had access to this safe and the firm's funds were also kept therein.

Moreover, apparently as the business of the Town increased, it hired several employees to do the Town's work and, although they worked in the offices of appellant's law partnership, they were not on its payroll.

We agree that, "two elements necessary to constitute the crime of larceny in addition to the felonious intent are a physical

taking and asportation of the thing taken from the actual or constructive possession of the owner." *Brown v. State,* 236 Md. 505, 513; 204 A. 2d 532, but we find no violations of this rule in the decision of the Court of Special Appeals in this case. Clearly, of course, under our decision in *Nolan v. State, supra,* the defendant cannot be guilty of the larceny of money in his actual possession but the evidence in this case discloses that little if any of the money here involved ever came into the actual possession of the defendant except by the commission of the crime charged. The collection of Town funds by an employee paid by the Town or by the law office secretaries authorized to make such collections and placed in a receptacle owned by the Town without, in any way, passing first through the hands of the appellant, gave actual possession to the Town and the fact that the receptacle was located in the office of a partnership used also as the offices of the Town would be insufficient to give actual possession to the appellant. He answers this point by arguing that "the funds, when placed in the safe by his secretaries or by him, remained in his constructive possession, so that any subsequent abstraction by him from the safe would be embezzlement and not larceny" but he cites no authority for the proposition that an alleged larcenist under circumstances such as this can rely on the doctrine of constructive possession so as to claim that no trespass was committed by him when he later abstracted funds belonging to his employer from a receptacle owned by the employer.

In *Nolan* our predecessors adopted certain of the English cases maintaining the various distinctions between embezzlement and larceny. In none of them is there any authority for extending the established doctrine of constructive possession to any alleged wrongdoer not in actual possession and the case of *Reg. v. Wright,* Dears & B. Crown Cas. 431, 441, 442, cited with approval therein shows that the accused must have actual possession before he can successfully maintain that his crime was embezzlement rather than larceny. In that case, the safe, furnished by the employer, was located in the home of the defendant used as the branch office of a bank whose main office was in another town. He took money of the bank from the safe after it had been placed therein and was convicted of larceny

from the constructive possession of his employer, Judge Crowder, one of the concurring judges saying, "The fact that the prisoner had the entire control over the premises makes no difference. If he took the money from the safe for the purposes of the bank, he did so as a part of his duty; but if he took it for his own purposes he was guilty of larceny."

The reliance by him upon *Morgan v. Commonwealth,* 47 S. W. 2d 543 (Ky. 1932) is misplaced. There the Court found exclusive and actual possession of the receptacle and the funds stolen by the defendant to have been always in the defendant, the Court stating at page 544 as follows:

> "Although the company had the right to demand the funds of him at any time, and although the company could potentially enter the safe by opening the sealed envelope and apprising itself of the combination, yet it was not intended by the company that it should interefere with appellant's control and possession of the contents of this safe and the funds of the company unless and until some condition which had not occurred in this case at the time of the conversion had come to pass. It is quite manifest that the possession of these funds at the time they were converted was in the appellant and that it had not yet become that of the Western Union. This being true, the conversion amounted to an embezzlement and not larceny."

The factual situation presented in *Morgan* is not presented by the record here.

The trial court as an advisory instruction to the jury stated that a taking from the possession of the Town of Leonardtown was a necessary element of the crime of larceny charged under count four of the indictment. There was evidence to support this instruction and it was a correct statement of the law. There was no request by the appellant that the term "possession" be further defined.

For these reasons we hold that the trial court properly denied appellant's motion for judgment of acquittal as to the larceny count and that the trial court correctly advised the jury as to the law of larceny applicable to the facts presented in evidence.

*Judgments affirmed.*

Barnes, J., dissenting:

I dissent because, in my opinion, the evidence in the case indicates that the defendant (1) was not guilty under count 2 of embezzlement by a clerk, servant or agent as defined in Code, Article 27, Section 129 in that there was a fatal variance between the allegations of count 2 which names the Town of Leonardtown as owner of the money allegedly embezzled by way of the "less cash" transactions and the evidence which establishes that the local banks owned the money, and (2) could not legally be guilty under count 4 of larceny in that the evidence showed that the defendant and not the Town had possession of the safe and its contents so that the crime, if any, would have been embezzlement and not larceny contrary to the advisory instructions of the trial court to the jury. I also dissent from a new theory (of both law and fact) used in the majority opinion to sustain the conviction in this case under count 4 in that it is not only unsound, in my opinion, but was not raised or decided in the trial court, was not decided by the Court of Special Appeals and was not briefed or argued before us.

It is necessary in considering this important case—important to the defendant because his liberty and professional future are at stake and to the criminal law of the State because of the intricate legal questions involved — to determine precisely what crimes are charged in the indictment. As pointed out by the majority, there were four counts in the indictment presented by the grand jury. Count 1 charged the defendant with the misappropriation of *money of the Town* under circumstances which would make it the crime of *embezzlement by a public official* as defined by Article 27, Section 138. This count was removed from the consideration of the jury by the direction of the trial court.

Count 2 charged the misappropriation of *money of the Town* under circumstances which would make it the crime of *embezzlement by a clerk, servant or agent* as defined by Article 27, *Section 129*.

Count 3 charged that the misappropriation of money of the Town under circumstances which would make it the crime of

*larceny after trust* as defined by Article 27, Section 353. This count 3 was removed from the consideration of the jury by the direction of the trial court.

Count 4 charged that the misappropriation of the *money of the Town* occurred under circumstances that would make it the common law crime of grand larceny.

It is clear that to sustain convictions, the evidence must be such that the jury could find the defendant guilty beyond a reasonable doubt *of the crimes charged in the indictment*. It is immaterial to the consideration of this case, that the evidence might possibly have been sufficient to have sustained a conviction of other crimes not charged in the counts of the indictment submitted to the jury. See *State v. Wheatley*, 192 Md. 44, 50, 63 A. 2d 644, 647 (1949).

(1)

*Count 2*

The trial court after having read to the jury the provisions of Section 129 then instructed the jury as follows:

"The only evidence that, if true, would permit a conviction of embezzlement in this case is the evidence that relates itself to the so-called less cash transactions, the defendant is alleged to have had with the First National Bank and the Maryland National Bank and the latter's predecessor bank. If you believe, from the evidence, beyond a reasonable doubt that the defendant did, in fact, receive currency from either or both of those banks in such transactions, you are instructed that *such currency was received as the agent of the town of Leonardtown* and it was his duty to deal with the same in the interest of that town so that if the evidence established beyond a reasonable doubt and to a moral certainty that the defendant did receive such funds, you must then determine whether, after the receipt thereof, he fraudulently and unlawfully converted the same to his own use and benefit. If you find from the evidence that he did receive such funds and that he did thereafter fraudulently and unlawfully convert the same to his own use and benefit

beyond a reasonable doubt and to a moral certainty, then your verdict should be guilty under Count II. On the other hand, if you have a reasonable doubt either that he did so receive such funds or that he fraudulently and willfully converted the same to his own use and benefit, under such a finding of facts, your verdict under Count II should be not guilty." (Emphasis supplied.)

It will be noted that the trial court gave a mandatory instruction that if the jury found that the defendant received currency from the banks, then such currency was received "as the agent of the town of Leonardtown." This rejected the position of the defendant that he was a public officer of Leonardtown and could only be prosecuted, if at all, under Section 138. The trial court also denied the defendant's motion for acquittal under count 2.

*There is a fatal variance between the allegations of ownership of the money by the town and the proof.*

In my opinion, there was a fatal variance between the allegations of count 2 which names the *Town of Leonardtown* as *owner of the money* allegedly embezzled by way of the "less cash" transactions and the evidence which establishes that *the two local banks owned the money.*

Count 2 provides in relevant part, as follows: "That William M. Loker, Jr." on July 1, 1949 "and then continuously up to and including" June 30, 1963 "at St. Mary's County aforesaid, feloniously and fraudulently did embezzle *from the Commissioners of Leonardtown,* a municipal corporation of the State of Maryland, in the sum of $110,229.83, *United States Currency, the property of the said Commissioners of Leonardtown,* a municipal corporation of the State of Maryland, in violation of Article 27, Section 129 of the Annotated Code of Maryland, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State." (Emphasis supplied.)

As the majority points out, our predecessors in *State v. Tracey,* 73 Md. 447, 21 A. 366 (1891) determined that the ownership of such money alleged to be embezzled under Section 129 must be alleged in the indictment and is one of the

elements of the State's proof to obtain a conviction under Section 129. The allegation of ownership of the money allegedly embezzled in the town was, therefore, an essential element of the crime and not merely a matter of surplusage. As was earlier pointed out, the trial judge instructed the jury that only the "less cash" money could be considered by the jury under count 2.

In my opinion, our holding in *Richardson v. State*, 221 Md. 85, 88, 156 A. 2d 436, 438 (1959), that "an allegation of ownership of stolen goods [in a larceny indictment] is supported by proof of any legal interest or special property in the goods, as, for instance, where the person named in the indictment is in lawful possession as a bailee or common carrier" is not applicable to the present case as the majority of the Court of Special Appeals held it was. As was observed in *Tracey*, the statute makes the offense under Section 129 larceny and a felony and hence the allegation of ownership is a necessary element to be alleged in the indictment and proved by the State. As we stated in *Richardson v. State*, 221 Md. 85, 87-88, 156 A. 2d 436, 437-48 (1959) "* * * the reason that a sufficient allegation of ownership is an essential requisite in a larceny indictment in that the court must be able to determine judicially that the property alleged to have been stolen was that of another and not the property of the accused, and also that the defendant is entitled to be informed of the exact accusation against him" citing with approval *State v. King*, 95 Md. 125, 51 A. 1102 (1902). Larceny is a criminal *trespass against possession*. Inasmuch as possession is an essential element, proof that the person alleged to be the owner of the stolen goods was a person lawfully entitled to possession by reason of a legal interest or special property in the goods, has been deemed to be sufficient proof of ownership in the person set forth in the indictment. *Richardson v. State, supra*. The proof in this case establishes that both ownership and possession of the "less cash" money were in the respective banks and that the town never did have either ownership or possession of that money, or any legal interest or special property in that money.

It is stated in the majority opinion that "there was testimony that, in some instances, the appellant asked a teller receiving deposits in this fashion to give him larger bills and said he was

going to put them in the other bank. In fact, no such deposits were made in the *Town's other account.*" (Emphasis supplied.) An examination of the testimony of the four bank tellers who testified in the case for the State fails to indicate to me that any of them testified that the defendant said he was going to deposit the "less cash" money *in the town's account.* For example, Anita L. Russell, teller for the Maryland National Bank, testified on this point, "Well, *he* usually asked for larger bills and said *he* was going to put them in the other bank." (Emphasis supplied.) This testimony is similar to the testimony of the other tellers. Lillian Pegg Smith, teller of First National, although at first indicating that the statement was made by the defendant, later testified that it could possibly have been made by Mrs. Weber, the defendant's secretary, and stated: "I assumed it was Maryland National but *they* never told me it was Maryland National." (Emphasis supplied.) Not only does the testimony of the tellers in regard to alleged statements by the defendant fail to indicate a contemplated deposit *to the credit of the town,* but no teller stated that this was her impression or understanding of the alleged statement by the defendant and, as indicated, Mrs. Smith testified that she assumed the "other bank" was Maryland National, but even here, she did not say that she assumed or understood that she knew the town had an account in Maryland National or that the defendant was to deposit the "less cash" money in such an account. In short, the testimony of the tellers is entirely consistent with the theory that the defendant intended to convert the "less cash" money to his own use at the time he received that money from the banks, and the State proved, as the majority indicates, that the defendant did not make any deposits of the "less cash" money in the town's accounts in either bank. There is no evidence whatever in the case that the defendant received the "less cash" money for some proper town purpose and *sometime later* decided to convert it to his use. All of the evidence indicates the contrary. Any crime committed by the defendant was therefore committed at the moment he received the "less cash" money from the tellers.

The majority states "* * * it is clear that this teller when such money was delivered by him to the appellant intended to

pass title to the Town." As has been indicated, there is no evidence whatever of such an intention by any of the tellers. They did not so testify and it would be most unlikely that they had any intention other than to hand over the money to the defendant. It was no concern of theirs what the defendant did with the money and there was no suggestion in the testimony that they gave the question of "passing title" to the town any thought whatsoever. It may be observed also that it is the intent *of the defendant* in regard to the money received and not the unexpressed and non-existent intent of the tellers with which one is concerned in this case.

When the question involved is whether or not the town owned or had a special interest in the "less cash" money, I find rather extraordinary the statement in the majority opinion that the defendant's "reliance upon the intricacies of civil liability as between the Town of Leonardtown and the banks has little relevance to the criminal charge here involved and the question of guilt or innocence is not dependent upon the many issues that can be raised in connection with the deposit of commercial paper, title thereto and the right to charge back credit given." How can the question of ownership or a special interest of the town in the money be determined except by a consideration of the applicable statutory and common law relating to such a property right? The criminal law sheds no light upon this question which is entirely civil in nature.

It is quite clear to me from an examination of the applicable statute and prior decisions of this and other courts, that the town did not own and had no interest, special or otherwise, in the money of the two banks reposing then in the cash drawers of the tellers of those banks. It is fundamental that the relationship between the bank and its general depositor is that of creditor and debtor. *Keller v. Frederickstown Savings Institution*, 193 Md. 292, 296, 66 A. 2d 924, 925, 10 A. L. R. 2d 423, 426 (1949). The bank is the debtor, the depositor is the creditor and the bank is the owner of its assets and cash in which the depositor has no rights of ownership or property. *Keller v. Frederickstown Savings Institution, supra, Dunlop Sand & Gravel Corp. v. Hospelhorn*, 172 Md. 279, 191 A. 701 (1937). If the bank becomes insolvent, its cash and other assets pass to its re-

ceiver and the general depositors are general creditors of the receivership estate. *Dunlop Sand & Gravel Corp. v. Hospelhorn, supra.*

The evidence is uncontradicted that the accounts involved in the "less cash" transactions were general checking accounts in which the bank was debtor and the town was creditor.

It is also quite clear that both under the applicable law and the contract between the town and the banks, the tellers had no right to pay over the "less cash" money to the defendant *for any purpose, legitimate or otherwise. All* of the checks listed on the "less cash" deposit slips were restrictively endorsed "For deposit only, Comm. of Leonardtown." By virtue of Code (1957) Article 11, Section 121 (then in force), this type of endorsement is deemed a restrictive endorsement and the endorsee bank is an agent for collection and was not an owner of those restrictively endorsed checks. *Leonardi v. Chase National Bank,* 263 App. Div. 552, 33 N. Y. S. 2d 706 (1942), *appeal denied,* 264 App. Div. 771, 35 N. Y. S. 2d 276 (1942).

In addition to the general law establishing these principles, the contracts of the town with the banks, introduced in evidence by the State (see State's Exhibit 17), provide: "In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credit."

It is apparent to me that banks, their officers and employees, are charged with knowledge of these elementary principles of law applicable to commercial paper and, in this case, there is no doubt that there was actual knowledge as well. Francis C. Delahay, assistant vice president of First National, testified for the State and stated on cross-examination as follows:

"Q. If the checks that are offered with the less cash deposit slip are stamped on the back thereof for deposit only, will the bank then honor a less cash request on a deposit slip?

"A. We would normally ask that the person presenting the checks to amend such an endorsement.

"Q. In other words, remove it?

"A. Amend it by removing the words for deposit only.

"Q. The words, for deposit only, are referred to as a restrictive endorsement, are they not?

"A. That's correct, sir.

"Q. And the restriction is that the checks are only to be deposited into the account in connection with which they are deposited, isn't that right?

"A. That is the common meaning given to that expression in banking circles."

The restrictive endorsement requires the bank to credit the entire proceeds of the check then endorsed to the payee's account in the bank, and if the bank fails to do this, the bank becomes liable to the payee—depositor for the full amount of the check. See *Duckett v. National Mechanics' Bank,* 86 Md. 400, 409-410, 38 A. 983, 986 (1897). See also *Frederick A. Potts & Co. Inc. v. Lafayette Nat. Bk.,* 269 N. Y. 181, 199 N. E. 50 (1935).

When the tellers of the banks handed the "less cash" money to the defendant, they handed him the bank's money in which the town had no ownership or title whatsoever and indeed violated the legal obligation and the contracts of the banks with the town in failing to give the town *full credit for the total amount* of the restrictively endorsed checks, rather than the net amount after the "less cash" deduction from the total amount of checks. See *Fidelity & Deposit Co. v. Marion Nat'l. Bank,* 116 Ind. App. 453, 64 N. E. 2d 583 (1946). The town legally suffered no loss from the incorrect action of the banks which was contrary to the applicable law and the deposit contracts, and, in my opinion, it follows that the town had no ownership, special interest, lien or other legal interest in the bank's money erroneously and incorrectly paid over to the defendant. It is obvious also that the "less cash" transactions cannot be considered as "withdrawals" from the town's account as a withdrawal could only be accomplished by the joint signature of both the president of the Town Commissioners and the treasurer of the town.

The banks—not the town—were the victims of any crime committed by the defendant and the indictment should have been

based on this theory so far as the "less cash" transactions are concerned. The decision of our predecessors in *Simmons v. State,* 165 Md. 155, 167 A. 60 (1933), strongly suggests that this would have been the proper way to have proceeded in this case. In *Simmons,* the accused in that case had falsely represented to a bank that one of its corporate depositors (of which the accused was an officer) had authorized him to make certain withdrawals from the corporation's bank account. The indictment charged the accused alternatively with larceny and in obtaining the money of the bank by false pretenses. Judge Parke, for the Court, stated:

> "The indictment charged him with larceny of money *from the Citizens' Bank of Hurlock, Maryland* * * * and with obtaining money *from the bank* by false pretenses * * *." (165 Md. at 159-160, 167 A. at 62.) (Emphasis supplied)

> "The substance of the offense was the obtaining of the money and, with a fraudulent intent, depriving the lawful owner of its title and possession * * *. [The] transfer was effected by the bank paying out *its money* on the order of the [defendant], to his nominees by reason of the prior false and fraudulent pretense or representation by the [defendant] to the bank that the money *of the bank,* induced to be paid out for the benefit of the [defendant] had been agreed by the [corporate depositor] should * * * be charged against the deposit account with the bank of the [corporate depositor]. (165 Md. at 162-163, 167 A. at 63.) (Emphasis supplied.)

> "The uncontroverted circumstances, at the time of the making of every one of the false pretenses, were * * * that the corporate third party did have in the bank ample deposits to meet the several sums obtained from the bank by the [defendant]; and that the bank actually charged these sums to the deposit account of such third party with the bank, and, subsequently, was obliged to refund these sums to such third party because the charges so made were unauthorized." (165 Md. at 175-176, 167 A. at 68.)

For these reasons, I conclude that there was a fatal variance between the required allegations of ownership of the money in count 2 and the proof and that for this reason, the conviction of the defendant on count 2 should be reversed.

## (2)

### Count 4

In my opinion, the defendant could not be guilty under count 4 of the indictment in that the evidence showed that *the defendant and not the town had possession* of the safe and its contents, so that the crime, if any, would have been embezzlement and not larceny contrary to the advisory instructions of the trial court to the jury.

In the majority opinion of the Court of Special Appeals there is an excellent review of the background and authorities relating to the elements of common law larceny, the British embezzlement statutes and the distinctions between larceny and embezzlement. As I agree with this review, it is not necessary to repeat or summarize it here. I do, however, disagree with the conclusion reached by the majority of the Court of Special Appeals in applying the established principles to this case, not only for the reasons set forth in the dissenting opinion of Judge Thompson in the Court of Special Appeals (with which I entirely agree), but also for some additional reasons.

The majority in the Court of Special Appeals stated that:

> "* * * if the appellant were only an employee of the town, he would have had possession of the safe and the placing of the money in the safe, would not terminate his exclusive possession of the money. A subsequent taking would constitute embezzlement and not larceny." (2 Md. App. at 34, 233 A. 2d at 362.)

It clearly appears, therefore, that the Court of Special Appeals was of the opinion (correct in my judgment) that the defendant had exclusive possession of the safe and its contents.

Unfortunately, the majority of the Court of Special Appeals then proceeds to base its opinion affirming the conviction on count 4 on the following novel and, as far as I have been able

to ascertain, unprecedented theory that because the defendant was a public official of the town as treasurer—

> "* * * he had an *identity with the town apart from his relationship as employee* of the Board. Thus his access to and control of the safe, owned by the town, was the access to and control of the town and the safe was in the *constructive possession* of the town and only in the custody of the Appellant." (2 Md. App. at 34, 233 A. 2d at 362.) (Emphasis supplied.)

This type of legal "schizophrenia" is in my opinion an undesirable addition to the criminal law and should not be approved. The majority of this Court does not approve it, but affirms for reasons which I consider equally unsound and unwise.

Before discussing the majority opinion of this Court on this point, it should be observed that the distinction used by the majority of the Court of Special Appeals was not urged by the State in that court and was not briefed by either party.

The majority opinion in this Court declines to follow the reasoning of the majority of the Court of Special Appeals but instead departs entirely from the holding of that court that the defendant had exclusive possession of the safe and its contents, states that this is a "false premise" and determines from the record, for the first time in this Court, that this exclusive possession did not exist. Quite apart from the merits of the conclusion of the majority on the facts—about which I will comment later—it does not appear to me to be permissible or wise for this Court to rest its decision upon a point not urged, briefed or argued either in the Court of Special Appeals or in this Court and, indeed, contrary to an express holding by the Court of Special Appeals. In my opinion, the factual basis for the proposition should have been submitted to the jury and, in any event, should have at least been considered by the trial court and argued and briefed in the appellate courts. This is clearly the intent of Maryland Rule 885 which is applicable to criminal cases as well as to civil cases. See *Martel v. State,* 221 Md. 294, 157 A. 2d 437 (1960) ; see also *Harmon v. State Roads Commission,* 242 Md. 24, 217 A. 2d 513 (1966) ; *Myers v.*

*Chief of Baltimore County Fire Bureau,* 237 Md. 583, 207 A. 2d 467 (1965) and *Elko v. Elko,* 187 Md. 161, 49 A. 2d 441, 168 A. L. R. 256 (1946).

The majority bases its conclusion that the defendant did not have exclusive possession of the safe and its contents on the theory that at certain limited times during the defendant's treasurership:

> (1) "The safe, itself, at least after the formation of appellant's first law partnership was kept in the office of his partner's secretary who did most of the Town's collections and bookkeeping and was not in the office of the appellant. She, in fact, kept the Town's receipt books on her desk and each morning opened the safe."
>
> (2) "Following the formation of appellant's second law partnership the safe was kept not in the office of the appellant but in a room just off the partnership reception room where there was a secretary. The office manager of the partnership sometimes handled Town business and on Saturdays when, apparently, only some of the partners and secretaries would be present, collected town taxes and put them in the desk drawer until the necessary bookkeeping entries could be made by a secretary of the firm. All secretaries of the firm and all partners had access to this safe and the firm's funds were also kept therein."
>
> (3) "Moreover, apparently as the business of the Town increased, it hired several employees to do the Town's work and, although they worked in the offices of appellant's law partnership, they were not on its payroll."

Before commenting on each of these factual statements, the following should be pointed out:

(a) There is no statement that any of these secretaries who worked in the defendant's law office was *directly responsible to the Commissioners* or was not under the *complete direction and control of the defendant* so far as the safe, the books and records and receipts of the town were concerned.

(b) There is no statement that during the limited times involved there is any evidence whatever that the defendant appropriated to his own use *any money* of the town.

(c) There is no statement that the Commissioners of the town had or sought to exercise any control of the secretaries mentioned, or even thought they had such control.

(a)

The record is clear to me that the secretaries mentioned were entirely under the control and direction of the defendant so far as any work for the town was concerned and, further, that the Commissioners authorized this and expected the defendant to exercise such control and direction.

In the minutes of the meeting of the Commissioners of the town on April 3, 1962, the following appears:

> "The Clerk asked the Commissioners to provide him with extra secretarial help, explaining the necessity for the same. The Commissioners then appropriated the sum of $25.00 per week to be used to partially defray the cost of a secretary to the Clerk with reasonable provisions for incentive increases as necessary."

In State's Exhibit 26, the financial report for the fiscal year ended June 30, 1963, on page 8 immediately after testimony, the salary of the "clerk, treasurer and counsellor" there is listed: "Salary—*clerical assistant*" (emphasis supplied) of $1,886.00 allocated equally—$943.00—to the General Fund and the Utility Fund. The same designation, with a higher figure, appears in the financial report for the fiscal year ended June 30, 1964.

Commissioner George P. Sparling, the defendant's successor as treasurer and a witness for the State, testified:

> "A. Yes, I know that the board did hire a secretary. I don't know whether it was July of '62 but I know the board hired its own secretary.
>
> "Q. At $25 a week?
>
> "A. At $25 a week. That was the town's share. Mr. Loker was paying $50 a week * * * $25 a week.
>
> "Q. And he was to pay half?
>
> "A. That's right."

Commissioner Kenneth B. Duke, also a witness for the State, testified:

"Q. * * * Did Mr. Loker collect fees due to the town?

"A. To the best of my knowledge, *all moneys* paid to the town were collected by Mr. Loker *and no one else.*" (Emphasis supplied.)

It is clear to me that the record indicates that the defendant, as treasurer, and not his secretaries, was understood by the Commissioners to be solely responsible and in fact did perform for the Commissioners all the fiscal affairs of the town. If it be thought that there was *any evidence* to indicate the contrary, then the matter should have been submitted to the jury with appropriate advisory instructions, and not decided for the first time on this appeal.

(b)

The State did not seek to prove any specific misappropriation of any specific money at a specific time by the defendant. It did prove that the books of the town indicated that *over the whole period* of the defendant's treasurership there was a substantial cash shortage, exclusive of the less cash transactions. As I read the record none of the secretaries referred to in the majority opinion on this point, testified that she had seen the defendant take any money from the cash box in the safe or indeed handle any money for the town. There was evidence of other secretaries that they had seen the defendant on a few occasions and not in any furtive manner, take lunch money from the cash box and place his "I.O.U." or "IOTC" notes in that box to indicate how much lunch money he had taken, but these amounts were small and did not at any time amount to $100 or over. So far as the testimony is concerned, there appears to be no evidence of any misappropriation of money by the defendant during the periods involved.

(c)

It has already been indicated that the Commissioners did not understand that they had any control or direction of the secretaries allocated to the defendant, part of whose salaries

were paid by the town. In addition to this, none of the secretaries involved so much as suggested that the Commissioners did or attempted to exercise any such direction and control. As I see it, all of the circumstances and inferences indicate that the Commissioners did not and did not expect to exercise such direction and control. It would seem clear that the presence of these secretaries for part of the time of the defendant's treasurership cannot in any way give the Commissioners any constructive possession over the cash in the safe.

Turning to specific comments on the three factual grounds for the conclusion of the majority, the record indicates the following to me:

### (1)

The safe at all times was kept within premises either owned or leased by the defendant or by the partnership in which he was a partner and not, at any time, in premises owned, leased or controlled by the Commissioners or to which they had access without the permission of the owners or lessees of those premises. The specific location of the safe inside those premises—whether physically in the portion of the premises directly used by the defendant or not—would not seem to me to be important, as *the Commissioners did not have access to it at any location within the premises.* Nor is it important for which of the law partners the particular secretary who also worked on the town books, did legal work. So far as the work on the town books and other financial work for the town was concerned, she did it under the direction and control of the defendant law partner, as treasurer. In short, the inter-office arrangements of the law firm secretaries is hardly meaningful in this situation.

Even though it is clear that the town had, in fact, originally purchased the safe, at least one of the Commissioners, Francis Dean, a witness for the State, referred to the safe as the defendant's safe. His testimony on cross-examination was in part, as follows:

> "Q. You also mentioned that after the board agreed to permit Mr. Loker to pay $10,000 to the town of Leonardtown that it was carried in the financial statement as money that had been located in his office, is that correct?

"A. It was located in *his* safe and the safe was in his office, that's correct." (Emphasis supplied.)

All of the Commissioners testified that they did not know the combination of the safe and there was no evidence indicating that the combination was available to them. In summary, the Commissioners did not have access to the safe without the defendant's permission and, in any event, could not have entered the locked safe if they had had access to it.

## (2)

Here again, the location of the safe within the premises of the treasurer's law partnership or the inter-office arrangement in regard to secretaries appears to be of no importance. The fact that the secretaries and all partners had access to the safe and kept the firm funds there is likewise of no importance to a consideration of this issue, as their access was under the authority and with the permission of the defendant, as treasurer, and was in no way under the authority or with the permission of the Commissioners.

## (3)

The contribution of the town to the salaries of certain secretaries would also seem to be of no importance as it is clear from the record, as I read it, that all of the secretaries were under the direction and control of the defendant, as treasurer, and not under the direction and control of the Commissioners.

In my opinion, the defendant is on sound ground in urging that when the secretaries, under his direction and control, placed money in the cash box in the safe, he had "constructive possession" of that money. If the doctrine of "constructive possession" of the master is available to the State to establish larceny by the servant, I cannot see why it is not equally available to the servant to establish that the crime was embezzlement and not larceny. I do not find it odd that there is no available authority for this proposition as doubtless heretofore in this type of situation a defendant would be indicted for embezzlement rather than for larceny so that the problem presented in this case would not arise for decision.

I am also of the opinion that the defendant's position on this point is amply supported by the decision of the Court of

Appeals of Kentucky in *Morgan v. Commonwealth,* 242 Ky. 713, 47 S. W. 2d 543 (1932). Indeed, in my opinion, the facts in the case at bar are far stronger in support of the defendant's position than were the facts in *Morgan* in support of the position of the accused in that case. In *Morgan* the receptacle was not only owned by Western Union but was in premises leased by that corporation. In addition to this, the combination of the safe was in a sealed letter in the possession of Western Union which could have been opened by its officials and the combination discovered. Neither of these elements of fact exists in the case at bar. The Court of Appeals of Kentucky held that as between Western Union and the accused, the accused had possession of the money, and the same ruling would apply, *a fortiori,* in the present case to establish that as between the Commissioners and the defendant, the latter had possession of the safe and its contents.

I also agree with Judge Thompson in his dissenting opinion in the Court of Special Appeals that our decision in *Nolan v. State,* 213 Md. 298, 131 A. 2d 851 (1957), when carefully considered, supports the defendant's position on this point. In our decision in *Nolan* it is apparent that the majority opinion is based on the fact that the president and vice president of the corporation *had access to the cash drawer.* The majority in *Nolan* relied on *Regina v. Wright,* 7 Cox Crim. Cas. 413, Dears & B. Crown Cas. 431 (1858), in which the safe was located in premises provided for the company's business and paid for by the company, to which the officers of the company had a key under the control of the corporation. In addition, the accused in *Wright* was under the obligation to account weekly to the corporation in regard to the transactions during the week. Lord Chief Justice Campbell, Martin, L.J. and Crowther, L.J. all emphasized in their opinions that the company had clearly reserved control of the safe by having possession of the key which would provide the entry of the company into the safe.

As our decision in *Nolan* confirms the principle that mere ownership of the receptacle by the employer is insufficient to give the employer constructive possession of the receptacle placed in it, it is clear to me that we would have held that the employer corporation in *Nolan* did not have constructive pos-

session of the receptacle if the officers of the corporation had not have had access to it.

For these reasons, in my opinion, the trial court should have directed a verdict for the defendant on count 4.

I would reverse the judgment in this case.